In re Theodore V. OLSON and Sandra Ann Olson, Debtors.

No. CV 82-0-178.

United States District Court, D. Nebraska.

April 20, 1982.

William Needler, Chicago, Ill., Frank C. Heinisch, Geneva, Neb., John Stevens Berry, Lincoln, Neb., for Theodore V. and Sandra Ann Olson.

Jerrold Strasheim and Timothy V. Haight, Omaha, Neb., for O'Neill Production Credit Ass'n.

Harry D. Dixon, Jr., Omaha, Neb., for Wells Fargo Business Credit, Inc.

Richard D. Myers, Omaha, Neb., for Regal-Beloit Corp.

## MEMORANDUM OPINION

BEAM, District Judge.

This matter comes before the Court on appeal [1] from the Bankruptcy Court.[2]

On March 1, 1982, the debtors, Theodore V. and Sandra Ann Olson, filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 1101 to 1146. On March 9, 1982, the debtors filed an application pursuant to 28 U.S.C. § 455 requesting that Judge Crawford disqualify himself and that he reassign the Chapter 11 proceedings to a bankruptcy judge in either Iowa or South Dakota. The debtors' application, submitted in affidavit form, makes various allegations. The crux of these allegations is that Judge Crawford is aware of the fact that debtor Theodore V. Olson and one of his employees, Tim Peterson, made accusations of improper conduct against Judge Crawford to various government officials and that, accordingly, Judge Crawford could not reasonably be expected to treat the debtors impartially in their Chapter 11 proceeding.

The debtors' affidavit also, in effect, incorporates by reference a separate affidavit of their principal attorney, William L. Needler. Mr. Needler's affidavit strings together a multitude of loosely drawn allegations which purport to describe the background of the debtors' recusal application. The Court believes that it is unnecessary to summarize Mr. Needler's allegations, aside from a point or two in need of clarification. In terms of additional information, Mr. Needler alleges that the accusations made by the debtors related to Judge Crawford's actions in the Olson Brothers Manufacturing Company bankruptcy proceeding (Bankruptcy Case No. 80–2674). Apparently, during the summer of 1981, Theodore V. Olson and Tim Peterson accused Judge Crawford of conspiracy to set fees with the principal secured lender in the corporate bankruptcy, Wells Fargo Business Credit, Inc., its attorneys, the court-appointed trustee and his attorneys, and the attorney for the unsecured creditors committee. Mr. Needler's affidavit (at paragraph 32) provides a basis for inferring that the trustee in the corporate bankruptcy case, Robert Stahl, notified Judge Crawford's law clerk that the accusations had been made by Olson and Peterson; the affidavit also makes an inference that the law clerk very likely relayed this information to Judge Crawford.

While perhaps it goes without saying, it should be emphasized that neither the debtors nor Mr. Needler have alleged in their affidavits that anything at all has come of the accusations made against Judge Crawford. That is, the record indicates that no federal or state official has found any basis for the complaint against Judge Crawford.

As earlier indicated, the debtors filed their recusal application in the bankruptcy court on March 9, 1982. They orally reasserted their application the same day at a hearing relative to an unrelated matter in the debtors' Chapter 11 case. For purposes

---

1. This appeal is brought pursuant to section 405(c)(1)(C) of the Bankruptcy Reform Act of 1978, Pub.L.No. 95–598, 92 Stat. 2685 (uncodified), *reprinted in* [1978] *U.S.Code Cong. & Ad.News.*

2. The Honorable David L. Crawford, United States Bankruptcy Judge for the District of Nebraska.

of that hearing only, which ultimately was resolved by informal agreement among counsel, Judge Crawford denied the debtors' recusal application. While it was not expressly stated for the record, Judge Crawford clearly implied for purposes of future proceedings in the debtors' Chapter 11, the recusal application would be set for full hearing and final determination as soon as reasonably practicable. In fact, on March 15, 1982, Judge Crawford entered an order setting the debtors' application for hearing on April 7, 1982. Notwithstanding the fact that Judge Crawford had not yet made his final decision with regard to his disqualification, the debtors filed an "emergency motion on appeal" with this Court (Civil No. 82–0–137). Said motion was treated by this Court as an interlocutory appeal or, in the alternative, as a petition for a writ of mandamus. Noting that Judge Crawford had set a hearing on the matter for April 7, 1982, the Court dismissed the debtors' appeal as premature on April 2, 1982.

At the April 7, 1982, hearing on the recusal application, Judge Crawford heard oral argument from counsel before ruling from the bench. Even though it is safe to assume that he would have appreciated some opportunity to challenge the veracity of the allegations contained in the affidavits filed by the debtors and their attorneys, *see Wounded Knee Legal Defense/Offense Committee v. F.B.I.*, 507 F.2d 1281, 1285 (8th Cir. 1974), Judge Crawford correctly took the allegations as true for purposes of the recusal application. *See Berger v. United States*, 255 U.S. 22, 35–36, 41 S.Ct. 230, 233, 65 L.Ed. 481 (1921); *United States v. Dodge*, 538 F.2d 770, 781 (8th Cir. 1976), *cert. denied sub nom. Cooper v. United States*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 547 (1977); *United States v. Trevithick*, 526 F.2d 838, 839 (8th Cir. 1975), *cert. denied*, 424 U.S. 972, 96 S.Ct. 1475, 47 L.Ed.2d 742 (1976); *Pfizer, Inc. v. Lord*, 456 F.2d 532, 537 (8th Cir.), *cert. denied*, 406

U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676 (1972). Judge Crawford, however, concluded that recusal was not warranted because, in his opinion, a reasonable man knowing all of the facts involved would not harbor any doubts as to the judge's impartiality toward the debtors, *see* 28 U.S.C. § 455(a); *United States v. Poludniak*, 657 F.2d 948, 954 (8th Cir. 1981), i.e., because a reasonable man knows that many people in public office, including judges, are the subject of accusations of one sort or another, and because a reasonable man also realizes that the mere fact that a person has filed an accusation with a government official does not necessarily make the accusation true. Additionally, Judge Crawford found that the accusations stemming from the corporate bankruptcy were not sufficiently related to the instant personal bankruptcy so as to create any doubt as to his impartiality.[3] *See Scarrella v. Midwest Federal Savings & Loan*, 536 F.2d 1207, 1210 (8th Cir.), *cert. denied*, 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976). In view of his determination that the affidavits were legally insufficient to justify recusal, Judge Crawford concluded that he had the duty to continue presiding over the debtors' bankruptcy case.

On April 8, 1982, the next day after Judge Crawford made his final decision on the recusal issue, the debtors' filed the instant appeal, styled as an "amended emergency motion on appeal." Oral argument by counsel was heard by this Court on April 14, 1982.

The debtors' counsel essentially argued that Judge Crawford's decision not to disqualify himself was erroneous under the applicable standards. Counsel for interested creditors, O'Neill Production Credit Association, Wells Fargo Business Credit, Inc., and Regal-Beloit Corporation, argued that Judge Crawford properly denied the debtors' recusal application.

█ Before proceeding to discuss the merits of this matter, it is necessary to

---

**3.** Paragraph 1 of the amended emergency motion on appeal [Filing # 2] alleges that debtor Theodore V. Olson is the President and the holder of 100 percent equity interest in Olson Brothers Manufacturing Company, Inc., the entity involved in corporate bankruptcy proceedings before Judge Crawford (BK Case No. 80 2674).

resolve the jurisdictional and procedural posture of the debtors' present appeal. As earlier indicated, this appeal is predicated upon section 405(c)(1)(C) of the Bankruptcy Reform Act of 1978.[4] And, as indicated in the Court's memorandum opinion dated April 2, 1982, in the prior, unsuccessful appeal, a bankruptcy judge's ruling upon the issue of his disqualification is interlocutory in nature. It is well established in the Eighth Circuit that such a ruling is technically not appealable until a final judgment has been entered. *Liddell v. Board of Education,* 677 F.2d 626 at 643 (8th Cir. 1982); *Scarrella v. Midwest Federal Savings & Loan, supra,* 536 F.2d at 1210. However, a lower court judge's determination not to disqualify himself is reviewable by way of a petition for a writ of mandamus, and if an interlocutory appeal is filed in such instance, the reviewing court will treat the appeal in a mandamus context. *Id.* Therefore, this Court will treat the debtors' "amended emergency motion on appeal" as a petition for a writ of mandamus.[5]

The next question relates to which judicial disqualification statute, or statutes, if any, are pertinent. As earlier indicated, the debtors' application for recusal was expressly predicated upon 28 U.S.C. § 455(a), which provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be ques-

tioned." Subsection (b) of the statute goes on to state additional, more specific grounds for recusal, e.g., actual personal bias. It should be made clear, however, that the debtors are not claiming or attempting to prove actual bias on Judge Crawford's part under subsection (b). Instead, their recusal motion is entirely based upon the provisions of subsection (a) of the statute.

While it is generally thought that section 455 is self-enforcing against the challenged judge, *see Fred Weber, Inc. v. Shell Oil Co.,* 566 F.2d 602, 605 (8th Cir. 1977) (dictum), *cert. denied,* 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978), *overruled on other grounds, Firestone Tire & Rubber Co. v. Risjord,* 612 F.2d 377, 378 (8th Cir. 1980); *Davis v. Board of School Commissioners,* 517 F.2d 1044, 1051 (5th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *Idaho v. Freeman,* 507 F.Supp. 706, 720 (D.Idaho 1981); 1 L. King, *Collier on Bankruptcy* ¶ 2.01[10][a], at 2–73 (1981), practical guidance on procedure has sometimes been derived from 28 U.S.C. § 144,[6] which by its express terms only applies to disqualification of federal district court judges. Section 144, which provides a procedure for the filing of an affidavit by a party and a certificate of good faith by counsel, evidently was relied upon in the case at bar.[7] While it is unnecessary for the Court to decide the issue of whether section 455 is actually self-enforcing, the Court does find that the affidavits sub-

---

4. *See* footnote 1, *supra.*

5. Federal district courts, of course, are customarily governed by the Federal Rules of Civil Procedure. Fed.R.Civ.P. 1. While the writ of mandamus has been abolished in the federal district courts, Fed.R.Civ.P. 81(b), mandamus in the case at bar is an appropriate remedy due to the fact that the Court is now convened in an appellate posture.

6. The statute provides:
    Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

    The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith. 28 U.S.C. § 144.

7. The principal party, Theodore V. Olson, submitted a brief affidavit. His lead counsel, William L. Needler, filed a lengthy affidavit. Needler's co-counsel, Frank Heinisch, filed a certificate of good faith with regard to Needler's affidavit.

mitted herein are an appropriate mechanism to trigger recusal of a bankruptcy judge under section 455 in a situation where the judge does not recuse himself on his own motion. 1 L. King, *Collier on Bankruptcy* ¶ 2.01[10][a], at 2–73 to 2–74 (1981).

■ Turning to the merits of the debtors' application for recusal pursuant to 28 U.S.C. § 455, the Court concludes that the affidavits filed in support of said application must be reviewed in light of the following standard:

> This section [§ 455], as revised in 1974, requires the use of an objective standard of reasonableness in a judge's disqualification decision. *United States v. Ritter*, 540 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976). Since the goal of the judicial-disqualification statute is to ensure not only actual impartiality, but also the appearance of impartiality, it is not necessary that actual bias or prejudice be present before disqualification is required.
>
> [A] judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street. Use of the word "might" in the statute was intended to indicate that disqualification should follow if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality.

*Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

---

**8.** At oral argument before this Court, counsel for the various creditors appearing in opposition to the debtors' application for recusal implied that perhaps Theodore V. Olson made charges against Judge Crawford for the sole purpose of getting Judge Crawford recused. While this may be true, there is no evidence in the record to support such a conclusion. All that is known is that charges were made in the summer of 1981 by Theodore V. Olson and Tim Peterson and that no formal charges have yet been lodged against Judge Crawford or anyone else by any federal or state law enforcement official.

*United States v. Poludniak, supra*, 657 F.2d at 954. A lower court judge's ruling on the sufficiency of recusal affidavits however, will not be disturbed on appeal absent a showing of an abuse of discretion. *See Scarrella v. Midwest Federal Savings & Loan, supra*, 536 F.2d at 1210; *United States v. Trevithick, supra*, 526 F.2d at 839.

■ This Court, of course, like Judge Crawford, is duty bound to take as true, for the purposes of judicial recusal only, the allegations contained in the affidavits filed in support of the application. This is true even where, as here, the allegations seem farfetched. Taking the allegations as true, this Court believes that *Poludniak's* "average person on the street" might be inclined to harbor doubts about Judge Crawford's impartiality toward the debtors, notwithstanding the fact that many persons will surely realize that federal judges, like all public officials, are often the victims of character assassination by way of unsubstantiated accusations of improper conduct.[8] This is obviously a close question, but the Court feels that Judge Crawford, in applying the *Poludniak* test to the facts of this case, should have exercised his discretion in such a way as to recuse himself in this matter.

At the April 7, 1982, hearing relative to this matter, Judge Crawford emphasized that he felt no actual personal bias toward the debtors despite the accusations that have been made. The Court has the utmost respect for Judge Crawford and is completely confident that, in fact, he harbors no personal bias toward the debtors. But, given the language of section 455(a) and the interpretation thereof in *Poludniak*, actual

Even if Mr. Olson did make his accusations solely to support a future disqualification motion, that would not necessarily mean that Judge Crawford would be entitled to deny such a motion. Indeed, the fact that a party has made unsubstantiated accusations of improper conduct might be all the more reason for the "average man on the street" to harbor doubts about whether the unfairly maligned judge could give the party impartial treatment when faced with discretionary matters at some future time.

bias is not pertinent. Instead, the mere appearance of a possible lack of impartiality in the mind of the average person on the street is enough to warrant recusal.

The Court is not unsympathetic to the plight of Judge Crawford and other judges similarly situated who find their impartiality challenged not for anything they may or may not have done, but because a party is willing to make an accusation (supported or otherwise) to a government official. Stated somewhat differently, applied in this fashion, section 455 offers an all too convenient means for a party to choose a judge of his liking. Because of this potential abuse of a statute which is expressly designed to foster due process, perhaps the statutory rule and judicial interpretation thereof ought to be narrowed somewhat. *See Idaho v. Freeman, supra,* 507 F.Supp. at 721 (suggesting that not allowing a judge to rebut a party's affidavit may result in a pre-emptive proceeding where the judge becomes the innocent victim of a false accusation of impropriety). The duty and function of this Court, however, is not to construe section 455 as it feels it should be construed, but rather as Congress and the higher federal courts have previously determined that it should be applied.

Much attention has been devoted in this appeal to the question of whether Judge Crawford improperly relied upon the "duty to sit" [9] doctrine in denying the debtors' recusal application. The Court willingly concedes that it is unsure whether that doctrine has any continued vitality after the 1974 amendments to section 455.[10] At any rate, given the Court's reluctant conclusion that Judge Crawford's decision not to recuse himself cannot be squared with *United States v. Poludniak, supra,* the secondary question regarding the duty to sit doctrine is now moot.

In conclusion, the Court believes that Judge Crawford should have granted the debtors' application. Thus, it appears that the debtors are entitled to a writ of mandamus from this Court ordering Judge Crawford to excuse himself from the debtors' Chapter 11 bankruptcy proceeding, and ordering him to take appropriate action to obtain a substitute judge to handle future proceedings relative to this matter.[11]

---

9. The duty to sit doctrine is mainly a product of case law decided under 28 U.S.C. § 144. That doctrine essentially provided that, when an affidavit was deficient under section 144 (e.g., in that it was untimely, spurious, or conclusory), then the district judge had an obligation not to disqualify himself. *United States v. Anderson,* 433 F.2d 856, 860 (8th Cir. 1970); 13 A. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure,* § 3549, at 369 (1975).

10. While it is clear that the 1974 amendments do away with the duty to sit doctrine, section 455(a) should by no means be construed as an invitation to wholesale disqualification. 13 A. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 3549, at 371 (1975). The Senate Judiciary Committee, in recommending what became the 1974 amendments, stated:

While the proposed legislation would remove the "duty to sit" concept of the present law, a cautionary note is in order. No judge, of course, has a duty to sit where his impartiality might be reasonably questioned. However, the new test should not be used by judges to avoid sitting on difficult or controversial cases.

At the same time, in assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

*Id.* at 371–72 (citing S.Rep.No. 93–419, 93rd Cong. 1st Sess., 1973, p. 5) (emphasis supplied).

11. Section 404(d) of the Bankruptcy Reform Act of 1978, Pub.L.No. 95–598, 92 Stat. 2684 (uncodified), *reprinted in* [1978] *U.S.Code Cong. & Ad.News,* provides that, during the transition period between the former Bankruptcy Act and the new Bankruptcy Code (i.e., October 1, 1979 to April 1, 1984), section 43 of the former Bankruptcy Act (11 U.S.C. § 71 (repealed)) shall continue to govern bankruptcy court vacancies and assignment of temporary bankruptcy judges in the event of disqualification. As applied to the case at bar, the Court finds that Judge Crawford should contact the Honorable Warren K. Urbom, Chief Judge for

212

A writ of mandamus shall be issued contemporaneously herewith.

the District of Nebraska, with regard to preparation of a certificate of necessity for submission to the Honorable Donald P. Lay, Chief Judge for the Eighth Circuit Court of Appeals.