**In re S. Donald NORTON, Debtor.**

**Bankruptcy No. 86–01516–SWC.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 1, 1990.

S. Donald Norton, pro se.

## ORDER

JOYCE BIHARY, Bankruptcy Judge.

On July 30, 1990, debtor S. Donald Norton filed a motion seeking the disqualification and recusal of United States Bankruptcy Judge Stacey W. Cotton in this individual Chapter 11 case. In order to avoid any question or appearance of impropriety, Judge Cotton, by Order entered August 8, 1990, requested Chief Bankruptcy Judge A.D. Kahn to reassign the motion for disqualification to another judge, and the motion was transferred to the undersigned for hearing and disposition by Order of August 10, 1990.[1]

The Court held a hearing on the motion on September 14, 1990. After carefully

---

**1.** The statute setting forth the grounds for judicial disqualification, 28 U.S.C. § 455, is intended to be self-enforcing. It is silent as to whether the judge whose impartiality is questioned should consider the motion to disqualify or whether the motion should be transferred to another judge. There are good policy reasons for both approaches, and courts have employed both approaches.

Under most circumstances, the motion to disqualify is heard by the challenged judge. *See Steering Comm. v. Mead Corp. (In re Corrugated Container Antitrust Litig.)*, 614 F.2d 958, 963 n. 9 (5th Cir.1980) *cert. denied,* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980)` and *United States v. Torkington,* 874 F.2d 1441, 1446 (11th Cir.1989) (where the court stated "the district judge has the initial responsibility to recuse himself from a case.") There are many reported cases, too numerous to cite, where an appellate court does not comment on the issue of who should hear the disqualification motion, but seems to approve of the challenged judge having heard the motion. *See e.g. Colony Square Co. v. Prudential Ins. Co. (In re Colony Square·Co.),* 819 F.2d 272, 274 (11th Cir.1987).

On the other hand, there are also a number of reported decisions where the motion to disqualify was transferred to a different judge for decision. *See e.g. Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 851, 108 S.Ct. 2194, 2197–98, 100 L.Ed.2d 855 (1988) (where the Supreme Court noted that the trial judge had denied a motion to vacate a judgment on the grounds that he was disqualified, and the Fifth Circuit reversed and remanded the matter to a different trial judge for factual findings pertaining to the disqualification); *Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1106 (5th Cir. 1980) (where the court noted that a previously remanded motion to disqualify was heard by a different district judge) *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980); *NEC Corp. v. Intel Corp.,* 654 F.Supp. 1256 (N.D.Cal. 1987) (where the motion for disqualification was assigned to another district judge after having been referred to the court's "assignment committee") *vacated per curiam as moot,* 835 F.2d 1546 (9th Cir.1988).

The Seventh Circuit noted the difficulty of applying § 455(a) when the judge must apply the standard *both* as its interpreter and as its object in *SCA Services, Inc. v. Morgan,* 557 F.2d 110, 116 (7th Cir.1977), and several commentators argue that the better procedure is to transfer a motion to disqualify under § 455 to another judge. Bloom, *Judicial Bias and Financial Interest as Grounds for Disqualification of Federal Judges,* 35 Case W.Res.L.Rev. 662, 697 (1985); Comment, *Disqualification of Federal District Court Judges for Bias or Prejudice: Problems, Problematic Proposals and a Proposed Procedure,* 46 Alb.L.Rev. 229, 247 (1981); Comment, *Disqualification of Federal Judges for Bias or Prejudice,* 46 U.Chi.L.Rev. 236, 266 (1978). *See also* Note, *Disqualification of Judges for Bias in the Federal Courts,* 79 Harv.L.Rev. 1435, 1439 (1966).

considering debtor's motion, as amended, and briefs,[2] the affidavit of the Honorable Stacey W. Cotton, the testimony of the debtor and Judge Cotton's former law partner J. Timothy White, and after reviewing the record of this case and adversary proceedings and the applicable law, the Court concludes that Judge Cotton is not disqualified from presiding over this Chapter 11 case, but that he is disqualified under 28 U.S.C. § 455(a) and § 455(b)(2) from presiding over any adversary proceeding or contested matter involving S. Donald Norton and United Federal Savings and Loan Association ("United Federal"). The Court further concludes that this is not an appropriate case for retroactive disqualification and that orders and judicial acts taken before the motion was brought should not be vacated or set aside pursuant to § 455.

There are three preliminary matters which require brief discussion. First, there are two bankruptcy cases pending, the case of S. Donald Norton, Case No. 86–01516 and the case of S. Donald Norton Properties, Inc., Case No. 86–02389. The motion to disqualify was filed only in the individual case, Case No. 86–01516. Mr. Norton advised the Court that he did not file a similar motion in the corporate case and that he would wait and consider whether to file a similar motion after a ruling on the motion in the individual case. (Record, September 14, 1990, at 4.) Accordingly, the discussion which follows pertains to the individual Chapter 11 case.

Second, debtor's motion to disqualify was filed more than four years after the Chapter 11 petition was filed, and debtor is currently unrepresented by counsel. This case was filed on March 3, 1986, and the motion was not filed until July 30, 1990.

Debtor testified that he did not know that Judge Cotton was a former law partner of Mr. White, counsel for United Federal, until June of 1990 and that he learned of this relationship in the course of his research when he "stumbled on a Martindale–Hubbell" directory with biographical information. Debtor was represented from the commencement of the case until October 26, 1987 by Dennis Hall, until Mr. Hall joined the office of the United States Trustee. After Mr. Hall withdrew, debtor was represented by Penn Nicholson until February 17, 1989. It appears that debtor has been representing himself since that time.

█ Third, while some of the papers filed by debtor mention 28 U.S.C. § 144 as a basis for disqualifying Judge Cotton, this statute is not applicable to bankruptcy judges.[3] It is well settled that 28 U.S.C. § 144 by its terms applies only to district judges. See Hepperle v. Johnston, 590 F.2d 609, 613 (5th Cir.1979) (§ 144 not applicable to circuit judges); Ginger v. Cohn, 255 F.2d 99 (6th Cir.1958) (§ 144 does not apply to a referee in bankruptcy, an appellate judge or a territorial court); Dubnoff v. Goldstein, 385 F.2d 717, 720 (2d Cir. 1967) (§ 144 does not apply to disqualification proceedings brought against bankruptcy referees); Pilla v. American Bar Ass'n, 542 F.2d 56, 58 (8th Cir.1976) (§ 144 is not applicable to circuit judges or Supreme Court justices); In re Foster Iron Works, Inc., 3 B.R. 715, 718 (S.D.Tex.1980) (§ 144 is not applicable to bankruptcy judges or federal appellate judges); See also In re Casco Bay Lines, Inc., 25 B.R. 747, 757 (Bankr. 1st Cir.1982); In re Olson, 20 B.R. 206, 209 (D.Neb.1982); Lieb v. Tillman (In re Lieb), 112 B.R. 830, 833 n. 1 (Bankr.W.D.Tex.1990); Lewis, Systemic Due Pro-

---

2. Debtor's initial motion and brief were filed on July 30, 1990. He filed an amended motion and brief on August 27, 1990, and on September 14, 1990, the day of the hearing, he filed another lengthy brief in support of his motion.

3. 28 U.S.C. § 144 provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

cess: *Procedural Concepts and the Problem of Recusal*, 38 Kan.L.Rev. 381, 407 (1990) (citing Note, *Disqualification of Judges for Bias in the Federal Courts*, 79 Harv.L.Rev. 1435 (1966)); Note, *Disqualification of Judges and Justices in the Federal Courts*, 86 Harv.L.Rev. 736, 738 (1973).

Debtor's motion is thus before the Court pursuant to 28 U.S.C. § 455, and § 455 is made expressly applicable to bankruptcy judges by Bankruptcy Rule 5004(a). The pertinent portions of § 455 provide as follows:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

. . .

In the papers filed by Mr. Norton, he alleges that before Judge Cotton became a judge, his law firm represented United Federal in a settlement of its dispute with Mr. Norton and former business associates of Mr. Norton named Messrs. McDonald, Provissiero and Crifasi; that Judge Cotton, while an attorney, was counsel to United Federal and witness to "that contract of sale and settlement"; that Judge Cotton was paid fees by United Federal in connection with this matter before becoming a judge; that Judge Cotton's former partner, J. Timothy White, represents United Federal in these proceedings; that United Federal has prosecuted Mr. Norton in these proceedings; that Judge Cotton has issued orders in matters where he and Mr. White have been material witnesses; that a settlement approved by Judge Cotton on June 20, 1988 involving litigation between Mr. Norton and Messrs. McDonald, Provissiero and Crifasi really benefitted United Federal and resulted in substantial payments from the bankruptcy estate to United Federal; that such settlement was proposed by debtor's counsel without debtor's consent and over his strenuous objection; and that Judge Cotton has a personal interest and is prejudiced.

The testimony of Mr. Norton and Mr. White, the affidavit of Judge Cotton, and the record of this case demonstrate that many of Mr. Norton's factual allegations are incorrect.

Judge Cotton was sworn in as a United States Bankruptcy Judge on May 1, 1985. Prior to that time, he was a member of the law firm of Cotton, White & Palmer, P.A. On or about April 1, 1985, Judge Cotton negotiated the terms of his withdrawal from the law firm and after April 1, 1985, he was not informed of and took no part in any new representation undertaken by the law firm or its lawyers. On April 30, 1985, Judge Cotton resigned from the law firm and was paid in full for his interest.

Judge Cotton's former law firm did not represent United Federal until April 15, 1985, fifteen days before Judge Cotton joined the bench. The lawyer representing United Federal was J. Timothy White, and the representation involved the settlement of various disputes with Mr. Norton, S. Donald Norton Properties, Inc., Joseph Provissiero, Thomas McDonald, and Michael Crifasi.

Mr. White testified that he planned to leave the law firm at approximately the same time Judge Cotton left to join the bench. Mr. White also left the firm at the end of April, 1985, and took his representation of United Federal with him to his new firm, Howard & White. The firm of Cotton, White & Palmer, P.A., never sent any billing statement to United Federal in this representation, and the first billing statement sent to United Federal was sent on May 9, 1985 from Mr. White's new firm of Howard & White.

The Chapter 11 cases of S. Donald Norton and S. Donald Norton Properties, Inc.

were assigned to Judge Cotton in March of 1986 through a blind draw procedure. Prior to receiving Mr. Norton's motion to disqualify Judge Cotton dated July 30, 1990, Judge Cotton had no knowledge of any representation by his former law firm of United Federal relating to the debtors. In the almost four and one-half years since this case was filed, neither Mr. Norton nor his attorneys ever gave notice of or brought this fact to Judge Cotton's attention.

Judge Cotton's former partner, J. Timothy White, represents United Federal in these proceedings, although by the time United Federal first appeared in this case, Judge Cotton's association with Mr. White and the former law firm of Cotton, White & Palmer, P.A., had been terminated for more than three years.

In the affidavit submitted by Judge Cotton, he states that had he known that his former law firm represented United Federal in matters dealing with Mr. Norton, he would have voluntarily recused himself from consideration of any matters involving United Federal to avoid any question or appearance of impropriety. He further states that now being apprised of this fact, he will recuse himself in the future from consideration of any matters involving United Federal and Mr. Norton.

Contrary to debtor's allegations, Judge Cotton had no actual knowledge of and did not personally participate in any representation of United Federal as a client of Cotton, White & Palmer, P.A., concerning S. Donald Norton or S. Donald Norton Properties, Inc. Judge Cotton did not receive any fees from United Federal as a result of Mr. White's representation of United Federal.

The record also does not support Mr. Norton's allegation that United Federal has prosecuted Mr. Norton in these proceed-

ings. In fact, United Federal's role in this bankruptcy case appears to be limited. At the present time, there are no pending matters to be heard involving United Federal. Mr. White testified that in Mr. Norton's individual bankruptcy case, United Federal has a claim on an unsecured note and a claim that may or may not be secured by some property of debtor's wife. Mr. White testified that there had been no hearing in Mr. Norton's case on any motion brought by United Federal. The Court has reviewed the adversary proceedings filed in this case and notes that United Federal is not and was not a party in any of the adversary proceedings.[4] The main controversy at the present time appears to involve the sale of Mr. Norton's house, and United Federal is not involved in that controversy.

Mr. Norton's real dissatisfaction relates to a settlement of litigation approved by Judge Cotton on June 20, 1988. Mr. Norton argues that the settlement was proposed by his attorney without his approval and over his strenuous objection. Mr. Norton argues that he never signed the settlement agreement attached to the motion filed by his attorney. The settlement compromised certain claims by and litigation involving S. Donald Norton, S. Donald Norton Properties, Inc., Thomas R. McDonald, Joseph Provissiero, Village Group, Inc., and the Village III Partnership. The terms of the settlement called for the payment of $450,000.00 from the bankruptcy estate to Messrs. McDonald and Provissiero and their attorney John Dabney and the allowance of unsecured claims in Mr. Norton's individual case by Messrs. McDonald and Provissiero of $225,000.00 each, with the agreement by McDonald and Provissiero to accept $87,500.00 in full satisfaction of their $225,000.00 claims. The settlement resolved two adversary proceedings, Adv.

---

**4.** The adversary proceedings include: *S. Donald Norton v. Habersham Fed. Sav. Bank, Lincoln Sav. & Loan Ass'n Charles M. Sheron, Joseph Provissiero and Thomas McDonald,* Adv. No. 86–0438A; *S. Donald Norton v. Joseph Provissiero, Thomas McDonald; Glass, McCullough, Sherrill and Harrold, a Partnership, S. Donald Norton Properties, Inc. and Thomas R. Hopson–Broker,*

*Inc., Intervenor,* Adv. No. 86–0323A; and *Edgar R. Whiteman and Dixie E. Whiteman v. Frank B. Wilensky, Robbie Turner, Evelyn Ratterree, Coldwell Banker, S. Donald Norton, Mrs. S. Donald (Julie) Norton, E.C.L.C., Inc., United States Trustee, and Jenny Pruett and Assoc.,* Adv. No. 90–0187.

No. 86–0323A and Adv. No. 87–0380A, and litigation pending in the Superior Court of Fulton County, Georgia, before the Honorable Luther Alverson. These adversary proceedings and the state court litigation were all dismissed with prejudice.

The Court has reviewed the motion to approve the settlement, the pleadings in the relevant adversary proceedings, and the transcript of the June 6, 1988 hearing on debtor's motion to approve the settlement. Nowhere in any of these papers is there any mention of United Federal, and there is no appearance listed for United Federal at the June 6, 1988 hearing. The transcript of the hearing reflects that debtor's counsel argued strongly in favor of the settlement; that the only objection raised at the hearing was by a Mr. Hopson; and that the settlement was reached after two long settlement conferences with Judge Alverson in the Superior Court of Fulton County.

In papers filed by Mr. Norton on the day of the hearing on the motion to disqualify Judge Cotton, Mr. Norton alleged that United Federal was the silent party in the litigation settled in 1988 and the recipient of funds paid from this Chapter 11 estate as a result of the settlement. Mr. White testified at the hearing on September 14, 1990 that United Federal did receive a significant portion of the cash proceeds of the settlement pursuant to an assignment agreement between Messrs. Provissiero and McDonald and United Federal. Mr. White also testified that Mr. Norton's counsel was aware of this assignment agreement.

While Mr. Norton or the estate may have a claim against his attorney or other parties to the settlement,[5] the facts do not remotely suggest anything improper in Judge Cotton's approval of the settlement based on the motion filed and the presentation made to the Court. Mr. Norton's dissatisfaction with his own attorneys is not a ground for disqualifying Judge Cotton. Nothing presented to Judge Cotton suggested that United Federal was involved in the June, 1988 settlement, and Judge Cotton was unaware until July of 1990 (when debtor filed his motion to disqualify) that his former law partner represented United Federal for the 15 days in 1985 before Judge Cotton's appointment to the bench.

As discussed above, Judge Cotton stated in his affidavit that he intends to recuse himself in the future from consideration of any matters involving United Federal and the debtor. Thus, the questions before this Court are: (1) whether Judge Cotton is disqualified under § 455(a), (b)(1) or (b)(2) from presiding over the entire bankruptcy case; and (2) whether any of Judge Cotton's previous orders and rulings in this case should be vacated.

█ The facts do not support any disqualification under § 455(b)(1) which applies when the judge has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts. While Mr. Norton's papers allege bias and prejudice on the part of Judge Cotton, there are no facts to support this allegation. At the hearing on September 14, 1990, Mr. Norton testified that he had no

5. At a hearing on April 26, 1990, before Judge Cotton on debtor's motion to terminate the appointment of Frank Wilensky as the Chapter 11 trustee, Mr. Norton made similar allegations about his attorney's misconduct and requested the trustee to do something to void the June, 1988 settlement. The trustee was appointed on February 21, 1989, months after the settlement. The trustee reported that in his opinion the settlement was regular on its face and he knew of nothing to suggest that counsel perpetrated a fraud on the Court or the creditors. Mr. Norton requested that the trustee abandon the estate's claims, if any, arising out of the settlement.

On May 17, 1990, the trustee filed a motion to abandon any interest of the estate in claims arising from the settlement. On May 31, 1990, Judge Cotton entered an Order and Notice of Abandonment requiring any objections to the trustee's proposed abandonment to be filed by July 20, 1990. The Order provided that if no objections were filed, then the Court may grant the motion as requested or the Court may grant such other relief as it deems equitable and just. Since many of the questions raised at the disqualification hearing on September 14, 1990 seemed pertinent to the motion to abandon, the Court entered an order on September 25, 1990 directing the Trustee to file a written report following an investigation of certain matters so that the Court could determine whether an abandonment is appropriate.

evidence of bias, that Judge Cotton has been "acting in good faith" and that he did not think Judge Cotton had done anything intentionally to injure him. Mr. Norton intimates that Judge Cotton must be biased in favor of his former law partner Mr. White, but the fact that a judge has been in the past a law partner to counsel appearing before him is by itself insufficient to warrant disqualification. *Alvarado Morales v. Digital Equip. Corp.*, 699 F.Supp. 16, 18 (D.P.R.1988); *See also Huff v. Standard Life Ins. Co.*, 683 F.2d 1363, 1370 (11th Cir.1982); *Singer v. Wadman*, 745 F.2d 606, 608 (10th Cir.1984) *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 785 (1985). Finally, Mr. Norton has not shown that Judge Cotton has decided any issues in this case involving disputed evidentiary facts as to which Judge Cotton had any personal knowledge, and there are not any pending controversies as to which Judge Cotton has personal knowledge of disputed evidentiary facts.

The interesting question presented here is whether the application of either § 455(a) or § 455(b)(2) requires a disqualification from the entire bankruptcy case. Judge Cotton has in effect already determined that § 455(a) disqualifies him from considering matters involving United Federal and the debtor. Judge Cotton states in his affidavit that had he known of Mr. White's representation of United Federal while a member of Cotton, White & Palmer, P.A., he would have recused himself from consideration of any matters involving United Federal "to avoid any question or appearance of impropriety" and now being apprised of the fact, he will recuse himself in the future from consideration of matters involving United Federal and the debtors.

▇ Judge Cotton is also disqualified from considering disputes involving United Federal and the debtor under § 455(b)(2). Section 455(b) contains *per se* rules that list particular circumstances requiring recusal. A judge is disqualified under § 455(b)(2) when any one of four circumstances exist:

1. When the judge in private practice served as a lawyer in the matter in controversy;

2. When a lawyer with whom the judge practiced law served during such association as a lawyer concerning the matter in controversy;

3. When the judge has been a material witness concerning the matter in controversy; or

4. When the lawyer described in circumstance (2) has been a material witness concerning the matter in controversy.

The first and third set of circumstances are not present. Judge Cotton did not serve as a lawyer in private practice in any case or transaction involving United Federal and the debtor, and Judge Cotton has not been a witness, material or otherwise, concerning any matter before him in this case. However, the second set of circumstances described in § 455(b)(2) exists as to matters involving United Federal. The facts are that Mr. White is a lawyer with whom Judge Cotton practiced law and during the last fifteen days of their association, Mr. White served as a lawyer for United Federal in its dealings with the debtor S. Donald Norton and S. Donald Norton Properties, Inc. Thus, in addition to Judge Cotton's voluntary recusal based on § 455(a), his recusal from consideration of matters involving United Federal and Mr. Norton is appropriate under § 455(b)(2).

Whether § 455(a) or § 455(b)(2) disqualifies Judge Cotton from presiding over the entire case requires an analysis of the proper scope of a recusal in a bankruptcy case under § 455(a) and an interpretation of the words "matter in controversy" as used in § 455(b)(2).

The purpose of 28 U.S.C. § 455 is to "promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Service Acquisition Corp.*, 486 U.S. 847, 865, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855 (1988). Section 455(a) contains the general all-inclusive objective standard that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Eleventh Circuit has stated: "The test is whether an *objective, disinterested, lay observer fully informed of the facts underlying the grounds on*

which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir.1988) (citing *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir.1980), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980)) *cert. denied*, —— U.S. ——, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989).

The Court has been unable to find any helpful cases interpreting the term "matter in controversy" as used in § 455(b)(2). One court urged a broad interpretation of "matter in controversy", stating that "disqualification is required where the proceeding relates in any broad sense to the suspect matter, even though such has not been made part of the current proceeding." [6] The Eighth Circuit seems to have rejected the argument that different cases may constitute the same "matter in controversy", but stated that even if it accepted the argument, "the question of what kinds of cases are sufficiently related for the purposes of § 455(b)(2) would remain a question of judgment and degree." [7]

In applying or interpreting either § 455(a) or § 455(b), it is apparent that the proper scope of a recusal in a bankruptcy case is not as clear as in an ordinary civil suit. If there are disqualifying circumstances under § 455(a) or (b) relating to a party or a lawyer in a civil action in district court, the result is clear and the judge would recuse himself from presiding over the action. Bankruptcy cases are different. A bankruptcy case "is the umbrella under which all other matters take place." Levin, *Bankruptcy Appeals*, 58 N.C.L.Rev. 967, 985 (1980). The "other matters" that take place within a bankruptcy case are often numerous and include adversary proceedings initiated under Part VII of the Bankruptcy Rules by a complaint and conducted much like a civil action under the Federal Rules of Civil Procedure, "contested matters" initiated by motion or objection and described generally in Bankruptcy Rule 9014, and numerous administrative matters described and provided for in various sections of the Bankruptcy Code or in various Bankruptcy Rules. Each of these matters presents a distinct controversy.

In a typical bankruptcy case, there are numerous claims and issues to be decided between or among distinct groups of parties. A judge will issue many orders, rulings and judgments relating to disputes and/or objections that have little or no relation to one another. For instance, a motion for relief from the automatic stay filed by Creditor A will generally have no relationship to an adversary proceeding filed by the debtor to recover a preferential transfer against Creditor B.

The unique nature of a bankruptcy case has been recognized by the appellate courts in developing flexible interpretations of the finality doctrine. In *Martin Bros. Toolmakers, Inc. v. Industrial Dev. Bd. (In re Martin Bros. Toolmakers, Inc.)*, 796 F.2d 1435, 1437 (11th Cir.1986), the court stated:

> Viewed realistically, a bankruptcy case is simply an aggregation of controversies, many of which would constitute individual lawsuits had a bankruptcy petition never been filed. While the goal of the bankruptcy process is to bring all present and potential contestants together and decide all the claims at the same time, a truly simultaneous resolution is impossible. Each claim represents a variable which must be quantified before a dividend is fixed or a workable reorganization plan adopted.

Similarly, the court in *Smith v. Revie (In re Moody)*, 817 F.2d 365, 367 (5th Cir.1987) stated:

> Bankruptcy matters, however, may extend over a long period of time and involve a number of separate proceedings—some adversary in nature—which present issues distinct from the other issues in the bankruptcy matter.

---

**6.** *In re Letters Rogatory*, 661 F.Supp. 1168, 1174 (E.D.Mich.1987).

**7.** *Little Rock School Dist. v. Pulaski County Special School Dist. (In re Little Rock School Dist.)*,

839 F.2d 1296, 1302 (8th Cir.1988), *cert. denied*, 488 U.S. 869, 109 S.Ct. 177, 102 L.Ed.2d 146 (1988).

Some appellate courts have viewed the numerous controversies in a bankruptcy case as discrete "units of litigation" or discrete "judicial units" in order to determine when an order is final for purposes of appeal.[8] It is similarly helpful to view a bankruptcy case as consisting of discrete units of litigation for purposes of determining the proper scope of judicial disqualification and for purposes of identifying a "matter in controversy". Indeed, Bankruptcy Rule 5004 contemplates a disqualification from an adversary proceeding or a particular contested matter as opposed to the entire bankruptcy case, as the Rule provides that a bankruptcy judge shall be disqualified "from presiding over the proceeding or contested matter in which the disqualifying circumstances arise *or, if appropriate,* shall be disqualified from presiding over the case." (emphasis added)

■■■ Whether the disqualifying circumstance makes it appropriate to transfer an entire bankruptcy case as opposed to a particular adversary proceeding or contested matter depends on the role and involvement of the party or lawyer to whom the disqualifying circumstance relates. There can be little disagreement that a disqualifying circumstance relating to debtor's counsel would require a judge to recuse himself from the entire case, as debtor's counsel's role is substantial and ongoing throughout the course of the bankruptcy case and he is likely to be involved in virtually all contested matters and adversary proceedings. On the other hand, a disqualifying circumstance relating to a creditor in a bankruptcy case does not automatically mandate a disqualification from and thus a transfer of the entire bankruptcy case. When the disqualifying circumstance involves a single creditor or its lawyer, it is only appropriate to transfer the discrete unit or units of litigation involving that creditor, i.e. the motion, objection or adversary proceeding, not the entire bankruptcy case, unless that creditor's role in the entire bankruptcy case is substantial and ongoing.

Turning to the instant case, the disqualifying circumstance relates to United Federal, a creditor. United Federal's role is not substantial and ongoing. As previously stated, there are no pending matters to be heard involving United Federal. There have been no hearings on any motion brought by United Federal, and United Federal has not been named as a party in any of the adversary proceedings filed in this case. Accordingly, applying § 455(a), the Court concludes that a reasonable person fully informed of all the facts would not have doubts about Judge Cotton's impartiality in considering issues and controversies in the bankruptcy case not involving United Federal. Similarly, the "matter in controversy" here as that term is used in § 455(b)(2) does not extend to the entire bankruptcy case, and Judge Cotton is not disqualified from presiding over the entire bankruptcy case under § 455(b)(2).

Finally, debtor's motion to disqualify suggests that some of the orders issued by Judge Cotton in this case should be set aside. The proper remedy here is limited to Judge Cotton's disqualification in the future from matters involving United Federal. This Court has not found any orders involving United Federal in this case, and thus there do not appear to be any violations of § 455(a) or § 455(b)(2). Moreover, even if any order in this case was technically violative of § 455, the Supreme Court noted in *Liljeberg* that there is room for harmless error and there need not be a draconian remedy for every violation of § 455(a). *Id.*, 486 U.S. at 862, 108 S.Ct. at 2203.

The Supreme Court suggested a test in determining the proper remedy for a violation of § 455(a) whereby the Court considers: (1) the risk of injustice to the parties in the particular case; (2) the risk that the denial of relief will produce injustice in other cases; and (3) the risk of undermining the public's confidence in the judicial process. *Id.* at 864, 108 S.Ct. at 2204. In *Parker v. Connors Steel Co.*, 855 F.2d

---

**8.** *Mason v. Integrity Ins. Co. (In re Mason)*, 709 F.2d 1313, 1316 (9th Cir.1983); *In re Saco Local Dev. Corp.*, 711 F.2d 441, 443–46 (1st Cir.1983);

and *In re Moody*, 817 F.2d 365, 367 (5th Cir. 1987).

1510, 1527–28 (11th Cir.1988), the Eleventh Circuit held that the harmless error analysis and the test outlined in *Liljeberg* should be applied to all violations of § 455 under both subsections (a) and (b).

In the instant case, Judge Cotton issued numerous orders over a period of more than four years. Vacating any of Judge Cotton's orders now would be inappropriate, as there was no impropriety by Judge Cotton in the entry of any order, no actual prejudice, and no knowledge whatsoever by Judge Cotton of any disqualifying circumstance until the motion to disqualify was filed in July of 1990. Retroactive disqualification here would be unfair to the many parties to this bankruptcy case, and there is no risk that refusing to set aside previous orders would produce injustice in other cases. Finally, there is no risk here of undermining the public's confidence in the judicial process.

In accordance with the above reasoning, debtor's motion to disqualify Judge Cotton from presiding over any adversary proceeding or contested matter involving United Federal and the debtor is GRANTED pursuant to 28 U.S.C. § 455(a) and § 455(b)(2); debtor's motion to disqualify Judge Cotton from presiding over this Chapter 11 case is DENIED; and, to the extent that debtor's motion seeks relief by way of retroactive disqualification, the motion is DENIED.

IT IS SO ORDERED.