Hank R. McWHORTER,
Plaintiff–Appellant,

v.

CITY OF BIRMINGHAM, a municipal corporation, Defendant,

Arthur Deutcsh, individually and in his official capacity as Chief of Police of Birmingham, Defendant–Appellee.

No. 89–7387.

United States Court of Appeals,
Eleventh Circuit.

July 24, 1990.

William M. Dawson, Erskine R. Mathis, Birmingham, Ala., for plaintiff-appellant.

Robert L. Wiggins, Jr., Gordon, Silberman, Wiggins and Childs, Ann K. Norton, Charles H. Wyatt, Jr., Law Dept., Birmingham, Ala., for defendant-appellee.

Before COX, Circuit Judge, HILL* and SMITH**, Senior Circuit Judges.

PER CURIAM:

Appellant Hank R. McWhorter, a former Birmingham, Alabama police officer, sued Birmingham police chief Arthur Deutcsh and the City of Birmingham under 42 U.S.C. § 1983, claiming that he was discharged in retaliation for the exercise of his First Amendment rights. Specifically, McWhorter alleged that he was fired for making statements to the press concerning

---

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

Deutcsh's physical abuse of a person in police custody and in order for Deutcsh to gain an advantage in Deutcsh's pending libel suit against the *Birmingham Post–Herald*. Deutcsh and the City contended that McWhorter had been fired for shooting a deer while on duty in violation of the police department's firearm policy.

The case was tried to a jury. At the close of McWhorter's case-in-chief, the district court directed a verdict in favor of the City, dismissing it from the case. McWhorter does not challenge this ruling on appeal. The trial resulted in a verdict for McWhorter, with the jury assessing compensatory and punitive damages against Deutcsh. The district court subsequently granted Deutcsh's motion for a new trial, however, based upon an improper closing argument by McWhorter's counsel. The case was retried and this time resulted in a verdict for Deutcsh.

McWhorter appeals, raising three issues. First, he contends the district court abused its discretion in overturning the jury's verdict and in granting Deutcsh's motion for a new trial. Second, he argues the district judge erred in refusing to recuse himself from this case. Third, he claims that the district court abused its discretion in limiting the testimony of several of his witnesses. For reasons set forth below, we affirm.

## I. NEW TRIAL MOTION

■ Prior to trial, Deutcsh filed a motion *in limine* to exclude, among other things, evidence that McWhorter was fired because he refused to cooperate with Deutcsh in the *Post–Herald* lawsuit. The district court originally indicated that if Deutcsh testified, his complaint against the newspaper would be admissible for credibility purposes. Upon reconsideration, however, the district court granted the motion.[1]

Despite the court's ruling that clearly prohibited mention of this *Post–Herald* litigation, McWhorter's counsel argued this excluded retaliation theory in the rebuttal portion of his closing argument and urged the jury to examine Exhibit 24, a copy of the *Post–Herald* complaint. More specifically, McWhorter's counsel stated:

I will submit to you there are some reasons for this [firing]. You can say, oh, this is all in the past and all that. But in these documents is a reason. Somebody has got a lawsuit, that you will get to reading, against the Birmingham newspaper for slandering him, a big time public official. That's the reason. That's the motive of all this. That is the motive. That is why Hank McWhorter needs to be discredited. Let's fire Hank. Let's keep sending Internal Affairs out to bring him in and question him.

\* \* \* \* \* \*

I would submit to you that I believe we have proved what we set out to prove in this litigation, that the compelling and the substantial reason for the termination of Hank McWhorter was two things. It was his speech activities which you can believe weren't important any more. But I submit to you they are. Read these exhibits, and you will know that. They were important. In the first place, exhibit 24, look at that one and look at 6. That is two I would like for you to read. They were important. He was fired for that reason.

\* \* \* \* \* \*

Read exhibit 6 and exhibit 24 and all the other ones.

After the jury retired to begin its deliberations, defense counsel informed the court that Exhibit 24, the *Post–Herald* complaint, was not on the parties' original exhibit list. McWhorter's counsel explained that prior to trial he had notified the defense that the exhibit list had been amended to include

---

1. The district judge reasoned that McWhorter had not pursued this theory at the pretrial conference, that McWhorter had agreed to a pretrial order which did not include this claim, and that McWhorter had not at any time sought to amend the pretrial order to add this claim.

Under Fed.R.Evid. 403, the probative value of this evidence was thus outweighed by its prejudicial effect and its ability to mislead and confuse the jury.

McWhorter does not challenge this evidentiary ruling on a₁ ₁eal.

Exhibit 24 and that they had not objected to such an amendment. The district judge expressed "shock" that McWhorter's counsel had referred to this litigation and sent the clerk into the jury room to retrieve Exhibit 24. The court also ordered that McWhorter's counsel be taken into custody and incarcerated overnight.[2]

Midway through their deliberations, the jury notified the court that it was missing Exhibit 24. The court instructed the jury that this exhibit was not in evidence. The jury subsequently returned a verdict for McWhorter, assessing actual and punitive damages against Deutcsh. In releasing McWhorter's counsel the following day, the court expressed concern that the jury was influenced by the improper argument, particularly in light of the jury's message that it had not received Exhibit 24. Deutcsh subsequently moved for relief from judgment and for judgment notwithstanding the verdict or a new trial in the alternative. After a hearing on the motion, the district court granted a new trial on the ground that the improper argument influenced the jury's verdict. As noted previously, the new trial resulted in a verdict for Deutcsh.

On appeal McWhorter argues that the district court erred in granting a new trial because counsel's closing arguments were not improper, not prejudicial, and not objected to, and because any prejudice was cured by the court's instructions. We disagree and hold that the district court did not abuse its discretion in granting Deutcsh's motion for a new trial.

■ In reviewing a trial court's disposition of a motion to grant a new trial, we apply an abuse of discretion standard. *Williams v. City of Valdosta*, 689 F.2d 964 (11th Cir.1982). A district court's decision to grant a new trial based on prejudicial conduct or pernicious behavior is less likely to constitute an abuse of discretion than a grant of a new trial based on some other ground "[b]ecause the trial judge who is actually present at trial, ... [is] best able to determine whether the proceeding has been 'contaminated' by events outside the jury's control." *Id.* at 975 n. 8. We thus

hesitate to overturn the grant of a new trial based on such grounds. *Id.; O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1308 (5th Cir.1977).

Contrary to McWhorter's assertions, the record clearly indicates that the *Post-Herald* theory had been eliminated from the case during pretrial conference and throughout the trial. Trial counsel's closing argument was in direct violation of the district court's ruling and was thus highly improper. *See, e.g., Brown v. Royalty*, 535 F.2d 1024, 1028 (8th Cir.1976) (repeated, deliberate reference to evidence excluded by district court is clear misconduct and grounds for new trial); *Adams Laboratories, Inc. v. Jacobs Engineering Co.*, 761 F.2d 1218, 1226 (7th Cir.1985) (plaintiff's counsel's reference to excluded evidence in direct contravention of the district court's order held to constitute prejudicial error). These improper arguments also likely affected the jury's verdict: this retaliation theory was injected into the case in the rebuttal portion of McWhorter's closing argument, immediately before the jury began to deliberate; defense counsel had no opportunity to respond to these claims; and the jury noticed that the *Post-Herald* complaint was not included in the exhibits.

■ Defense counsel's failure to object to the improper argument, although troublesome, is not fatal to Deutcsh's case. A contemporaneous objection to improper argument is certainly the preferable method of alerting the trial court to the error and preserving such errors for review, *Woods v. Burlington Northern Railroad Co.*, 768 F.2d 1287, 1292 (11th Cir.1985), *rev'd on other grounds*, 480 U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987); however, "where the interest of substantial justice is at stake," improper argument may be the basis for a new trial even if no objection has been raised. *Edwards v. Sears, Roebuck and Co.*, 512 F.2d 276, 286 (5th Cir.1975); *Hall v. Freese*, 735 F.2d 956, 961 (5th Cir.1984); Fed.R.Civ.P. 61. In this case, the trial judge focused on the improper argument despite the lack of an objection, and his

**2.** No issue relative to the propriety of this action is raised on this appeal.

grant of a new trial served to vindicate the authority of the court. We therefore cannot say that the district court abused its broad discretion in determining that the interest of substantial justice mandated a new trial. *Hall,* 735 F.2d at 961. We also recognize that curative instructions do not always eradicate the prejudice resulting from an improper argument, *see O'Rear v. Fruehauf Corp.,* 554 F.2d 1304, 1309 (5th Cir.1977), and thus cannot say that the district judge abused its discretion in determining that its instructions were insufficient to erase the prejudice resulting from the improper argument.

## II. RECUSAL

■ McWhorter next asserts that the district judge erred in refusing to recuse himself from this case pursuant to 28 U.S.C. § 455(a), which provides: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C.A. § 455(a) (West Supp.1990). McWhorter argues that the following facts create the appearance of impropriety and thus serve as bases for recusal: the fact that Judge Clemon and the Mayor of Birmingham entered a business partnership prior to the first trial in this case;[3] the fact that Judge Clemon did not disclose the existence of this business relationship in the evidentiary hearings held on the motions to recuse; and the fact that Judge Clemon is a personal friend of the Mayor.[4] McWhorter also argues that the trial was conducted unfairly with respect to McWhorter, indicating Judge Clemon's prejudice toward him and also requiring his recusal from this case.

■ A judge's refusal to recuse himself is reviewed under the abuse of discretion standard. *Jaffree v. Wallace,* 837 F.2d 1461, 1465 (11th Cir.1988). The standard under section 455(a) is an objective one: "The test is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Conners Steel Co.,* 855 F.2d 1510, 1524 (11th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989).

■ Ordinarily, a judge's rulings in the same or a related case may not serve as the basis for a recusal motion. *Jaffe v. Grant,* 793 F.2d 1182, 1189 (11th Cir.1986), *cert. denied,* 480 U.S. 931, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987). The judge's bias must be personal and extrajudicial; it must derive from something other than that which the judge learned by participating in the case. *Id.* at 1188–1189. An exception to this general rule occurs when the movant demonstrates "pervasive bias and prejudice." *Id.* at 1189 (quoting *United States v. Phillips,* 664 F.2d 971, 1002–03 (5th Cir., Unit B (1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982)). In this case, McWhorter's allegations of bias stem merely from disagreement with several evidentiary rulings of the district court throughout the course of the trial. The alleged bias is thus judicial rather than personal in nature. We have reviewed the transcript and are not persuaded that these rulings demonstrate the district judge's pervasive bias and prejudice against McWhorter. The district court did not abuse its discretion in denying the recusal

---

**3.** Approximately one month prior to the first trial in this case, Judge Clemon and the mayor each invested $20,000 and became limited partners in Stewart Cornelius Properties Center Brook Partnership. A newspaper article describing an apartment project being developed by the partnership alerted McWhorter to this fact.

**4.** Although McWhorter's brief is unclear on this point, he also seems to argue that the fact that Judge Clemon's representation of the City of Birmingham in the City's effort to adopt an

affirmative action program prior to his appointment to the bench in 1980 also requires his recusal in this case. At the recusal hearing, McWhorter's counsel admitted that he was aware of this fact prior to trial. The motion to disqualify the district judge based on this fact, initially made on the second day of the first trial in this case, was thus untimely and need not be considered by this court on appeal. *United States v. Slay,* 714 F.2d 1093, 1094 (11th Cir. 1983).

motion based on the alleged partiality of the trial court.

 The district judge also did not abuse its discretion in denying the recusal motion based on his friendship and business relations with the Mayor of Birmingham. The Mayor was neither a party nor a witness in this case. Without more, the Mayor's connection with the City is insufficient to create the appearance of impropriety.

### III. LIMITATION OF WITNESSES' TESTIMONY

Appellant also argues that the district court abused its discretion in limiting the testimony of several of McWhorter's witnesses. Appellant proffered the testimony of other police officers who allegedly were harassed and intimidated by Deutcsh in connection with the prisoner abuse incident and other unrelated incidents.[5] The district court excluded this testimony under Fed.R. Evid. 403, reasoning that the probative value of such testimony was outweighed by its ability to confuse and mislead the jury. On appeal, McWhorter argues that the evidence was admissible under Fed.R.Evid. 404(b) to show that his mistreatment was part of a policy, custom or practice of the City, in order to impose liability on the City. Alterntively, McWhorter argues this testimony was admissible as habit evidence under Fed.R.Evid. 406.

 While the district court certainly was not liberal in its approach to admitting evidence of this type, we cannot say it abused its discretion in excluding this testimony. At issue in this case was McWhorter's history of employment under Deutcsh. The admission of testimony relating to other police officers' grievances against Deutcsh could have resulted in a series of mini-trials centering on the employment history of each officer. Moreover, even if the district court did err in excluding this

evidence, this error was harmless in view of the jury's finding that McWhorter would have been discharged for violating the firearms policy even if he had not criticized Deutcsh. This evidence relating to Deutcsh's treatment of these employees does not rise to the level of habit evidence under Fed.R.Evid. 406. "A habit ... is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or giving the hand signal for a left turn...." *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1524 (11th Cir. 1985) (quoting *McCormick on Evidence* § 195 at 462–63). In this circuit, " 'adequacy of sampling and uniformity of response' are controlling considerations" in determining when certain behavior may become a habit. *Loughan*, 749 F.2d at 1529 (quoting *Reyes v. Missouri Railroad Co.*, 589 F.2d 791 (5th Cir.1979)). We are not persuaded that the proffered testimony establishes that Deutcsh had a habit of harassing police officers in the department who exercised their First Amendment rights.

### IV. CONCLUSION

For the foregoing reasons, we AFFIRM.

---

5. Specifically, McWhorter proffered the testimony of James Gay, a homicide detective who resigned after the prisoner abuse incident due to the commotion in the department; Captain Carl Garrett, a captain in the department who was allegedly harassed in connection with his

investigation of the incident; Sonny Gjlem, a police officer who allegedly was harassed in general; and Sergeant Nolan Hopkins, who allegedly incurred Deutcsh's animosity for his leadership position in the Fraternal Order of Police.