In the Matter of the CELOTEX
CORPORATION, et al.,
Debtor.

Bankruptcy Nos. 90–10016–
8B1, 90–10017–8B1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 17, 1992.

See also 134 B.R. 993.

Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, Fla., for The Celotex Corp., et al.

Shirley C. Arcuri, Shirley C. Arcuri, P.A., David A. Maney, Maney, Damsker & Arledge, P.A., Tampa, Fla., for Harry Goldman, Jr.

Dennis J. Drebsky, Rogers & Wells, New York City, for The Home Indem. Co. and Home Ins. Co.

Sara Kistler, Asst. U.S. Trustee.

John W. Kozyak, Kozyak Tropin Throckmorton & Humphreys, P.A., for Asbestos Property Damage Claimants Committee.

Charles M. Tatelbaum, Johnson, Blakely, Pope, Boker, Ruppel & Burns, P.A., for Creditors Committee of Unsecured Creditors.

William Knight Zewadski, Trenam, Simmons, Kemker, Scharf, Barkin, Frye &

O'Neill, for Unofficial Asbestos Health Claim co-defendants Committee.

M. Elizabeth Wall, Honigman Miller Schwartz and Cohn, for Asbestos Health Claimants Committee.

## ORDER DENYING MOTION TO RECUSE

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for final hearing upon the Motion to Recuse Thomas Edward Baynes, Jr., Bankruptcy Judge from Presiding in Further Proceedings in These Matters Concerning Any Alleged Contempt of Harry Goldman, Jr., Attorney at Law, and in the Adversary Proceeding, which sought, *inter alia*, to recuse this Judge from hearing the Third Order Regarding Order to Show Cause Directed to Harry Goldman, Jr. This Court, upon hearing argument of counsel and considering the record, finds the Motion to Recuse should be denied.

### FACTS

(1) On October 12, 1990, Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C.). Pursuant to 11 U.S.C. § 362(a), the automatic stay came into effect at that time.

(2) On October 17, 1990, this Court entered an Order Granting Emergency Motion for Determination of Applicability of § 362 Stay to Pending Matters or, in the Alternative, for Extension of § 362 Stay to Pending Matters ("Section 105 Stay Order") pursuant to 11 U.S.C. § 105 which, in pertinent part, stayed, restrained, and enjoined all entities "from commencing or continuing any judicial, administrative or other proceeding involving any of the Debtors regardless of (a) who initiated the proceeding, (b) whether the matter is on appeal and a supersedeas bond has been posted by the Debtors or (c) the appellant in an appeal is one of the Debtors."

(3) Harry Goldman, Jr., is the attorney of record for the plaintiffs in two asbestos cases in the Circuit Court for Baltimore City, a Maryland trial court. In February and April, 1989, the trial court entered judgments in favor of Goldman's clients and against Debtor and other defendants in the total amounts of $2,000,000 and $1,800,000, respectively. Debtor, along with other defendants, appealed these adverse judgments to the Maryland Court of Special Appeals, the intermediate appellate court. In order to stay execution of the judgments pending appeal, Debtor posted two supersedeas bonds issued by Home Insurance Company and Home Indemnity Company ("Home") in the amounts of $2,300,000 and $2,000,000 respectively. On November 5, 1990, post-petition, the Maryland Court of Special Appeals affirmed the trial court judgments and issued mandates for judgments on both appeals. All defendants except Debtor petitioned for certiorari to the Maryland Court of Appeals, the highest appellate court.

(4) On December 17, 1990, post-petition and subsequent to the Section 105 Stay Order, Goldman made demand on Home for payment on the supersedeas bonds on behalf of one of his judgment creditors. On January 4, 1991, Goldman filed a motion for judgment and order to pay against Home on each of the supersedeas bonds in the state trial court. Communications between counsel for Home and Goldman established Goldman's knowledge of the existence of the automatic stay provided under 11 U.S.C. § 362 and this Court's Section 105 Stay Order. Goldman's position was that he would proceed against Home with respect to the supersedeas bonds and this Court's Section 105 Stay Order had "no legal force and effect by its terms."

(5) On January 14, 1991, Debtor filed its Emergency Motion Requesting Entry of an Order to Show Cause which requested that Goldman be directed to appear before this Court to show cause why he should not be sanctioned, held in contempt for violation of the automatic stay and specific orders of this Court, and otherwise required to respond as to compensatory and punitive damages caused by his actions.

(6) This Court granted Debtor's motion and a hearing was held on the Order to Show Cause on January 21, 1991. Gold-

man did not attend the hearing because "he knew, based on overwhelming legal authority, that supersedeas bonds are not property of the debtor, that the automatic stay provision of 11 U.S.C. § 362 does not apply to attempts to collect on supersedeas bonds, and that the Bankruptcy Judge was without jurisdiction to enjoin proceedings to collect on supersedeas bonds." On February 1, 1991, this Court entered an Order Regarding Order to Show Cause Directed to Harry Goldman, Jr. ("February 1 Order"), finding Goldman had sufficient notice of the Order to Show Cause, intentionally ignored and violated both the 11 U.S.C. § 362 and § 105 Stays, and thereby was in civil contempt of the Court. The February 1 Order prohibited Goldman and his law firm from taking any further action associated with collection of the proceeds of any bond; sanctioned Goldman $200 a day from December 17, 1990, until the civil contempt was purged; provided a mechanism by which Goldman could purge himself of any contempt; sanctioned Goldman as to attorney's fees in the amount of $2,500 which could not be purged; and provided that if Goldman did not comply with the February 1 Order, Debtor might seek further orders to allow it to proceed against Goldman.

(7) On February 11, 1991, Goldman filed a Notice of Appeal of the February 1 Order. On the same day, Goldman filed a Motion for Leave to Appeal which the District Court denied because the February 1 Order was final and appealable as a matter of right. The appeal is presently pending before the U.S. District Court for the Middle District of Florida (Case No. 91–271–CIV–T–21B).

(8) On March 11, 1991, in direct violation of this Court's February 1 Order, the 11 U.S.C. § 362 automatic stay, and the Section 105 Stay Order, Goldman prepared and served Home with writs of execution in both of the Maryland cases. Thereafter, on March 19, 1991, Debtor filed its second Emergency Motion Requesting Entry of an Order to Show Cause Directed to Harry Goldman, Jr. The Court granted Debtor's Motion and a hearing was held on the second order to Show Cause on April 19, 1991.

Although his counsel appeared, Goldman failed to appear at the hearing.

(9) Subsequent to the hearing and in part as requested by this Court, Goldman filed an answer, objection and opposition to the second Order to Show Cause, and a supplement to the answer, objection and opposition to the order to show cause directed against him. Debtor filed responses to those documents filed by Goldman.

(10) With respect to the second Order to Show Cause, Goldman argued the Bankruptcy Court had no authority to hold the hearing on the second Order to Show Cause because (a) his appeal of the original February 1 Order divested this Court of any jurisdiction further to adjudicate his contempt; (b) the February 1 Order, if final, is invalid because the Bankruptcy Court did not determine whether this proceeding was core or non-core; (c) the Section 105 Stay Order is void and has no effect because the proper procedure for obtaining an injunction is by filing an adversary proceeding, not a motion, and therefore the February 1 Order which was based on the Section 105 Stay Order is void; (d) the Section 105 Stay Order does not meet the requirements of a temporary restraining order; (e) neither the 11 U.S.C. § 362 automatic stay nor the Section 105 Stay Order operates to stay a state court's entry of judgment against a non-debtor which posted a supersedeas bond on behalf of Debtor; and (f) Goldman can lawfully execute on Home's personalty in partial satisfaction of his judgment against Home.

(11) On June 13, 1991, this Court entered its Omnibus Order on Motion to Lift the Stay with Regard to Celotex Appeals and to Release Supersedeas Bonds Thereon ("Omnibus Order"). *In re Celotex,* 128 B.R. 478 (Bankr.M.D.Fla.1991). The Omnibus Order holds that the determination of whether supersedeas bonds are property of Debtor's estate is a core proceeding; the supersedeas bonds are property of the estate where, at the time of filing of the petition, the appellate process between Debtor and the judgment creditor has not been concluded, thus, the automatic stay prevents any actions against the supersede-

as bond; when the appellate process is concluded, the judgment creditor is precluded from proceeding against any supersedeas bonds posted by Debtor without first seeking to vacate the 11 U.S.C. § 105 stay; 11 U.S.C. § 105 allows this Court, *sua sponte,* to enter a stay order against any and all parties for specific or general purposes in order to insure the integrity of the bankruptcy system and to protect Debtor in the initial stages of the reorganization proceeding, therefore, Debtor did not have to file an adversary proceeding in order to establish the 11 U.S.C. § 105 stay; and all judgment creditors are precluded from proceeding against any supersedeas bond posted by Debtor without first seeking relief from the 11 U.S.C. § 362 or § 105 stays.[1]

(12) The Omnibus Order having resolved all the arguments raised by Goldman, this Court, on July 24, 1991, entered an Order on Order to Show Cause ("July 24 Order"). In the July 24 Order, the Court found with respect to the second Order to Show Cause that Goldman's actions against Debtor took place post-petition; that the mandate issued by the Maryland Court of Special Appeals with respect to Goldman's clients' judgments against Debtor did not terminate Debtor's interest in the supersedeas bonds since the mandate was entered post-petition. The Court further found Goldman's actions were in violation of 11 U.S.C. § 362; Goldman had notice of the 11 U.S.C. § 105 stay imposed by this Court's Section 105 Stay Order; and Goldman's actions had been continuous notwithstanding the imposition of both stays and the February 1 Order enjoining him personally and sanctioning him monetarily. Further, this Court determined the appeal of the February 1 Order did not divest this Court of jurisdiction to sanction Goldman for subsequent and continuing violations of the automatic stay.

(13) Since the Court in its July 24 Order resolved the issues that were presented at the second order to show cause hearing on April 19, the Court set a subsequent hearing on its second Order to Show Cause for September 17, 1991, required Goldman to appear to show cause why he should not be further sanctioned for violation of this Court's February 1 Order and the 11 U.S.C. § 362 and § 105 stays, and required Goldman by August 30, 1991, to advise the Court and the U.S. Trustee in writing that he would personally appear at the scheduled hearing on September 17, 1991. If such assurance of appearance was not provided by August 30, then the Court would direct the U.S. Marshal Service to take Goldman into custody and physically present him at the scheduled hearing. No objection to the July 24 Order was filed by any party. Goldman did file a Notice of Appeal of the July 24 Order, but the U.S. District Court for the Middle District of Florida dismissed the appeal as untimely (Case No. 91–1111–CIV–T–21B). Goldman, on August 30, 1991, filed with the Court a statement that he would not voluntarily appear at the September 17 hearing. He generally restated his previous positions concerning the supersedeas bonds and the jurisdiction of this Court and stated he would file a motion to recuse this Court from any further proceedings in this matter and any pending adversary proceedings, file a complaint with the Judicial Disabilities Commission of the U.S. Court of Appeals for the Eleventh Circuit, and petition the U.S. District Court for a writ of prohibition or mandamus.

(14) Having been advised by Goldman that he would not voluntarily appear at the September 17 hearing, this Court on September 3, 1991, entered an Order Commanding the United States Marshal to Take Harry Goldman, Jr., into Custody and Physically Present Him to the Court ("Custody Order").

(15) On September 6, 1991, Goldman, through counsel, filed Objections to Order Commanding the United States Marshall (sic) to Take Harry Goldman, Jr. into Custody because (a) the Custody Order was entered without a hearing to afford Goldman, either in person or through counsel, the opportunity to show why he should not

---

1. The Court of Appeals for the Third Circuit has adopted this Court's position regarding supersedeas bonds. *Borman v. Raymark Industries,* 946 F.2d 1031, 1034 (3d Cir.1991).

be held in contempt; (b) the Custody Order contained no recitation of facts constituting the contempt charged; (c) the Custody Order contained no description of the contempt as civil or criminal; (d) if criminal, the Custody Order did not state that it would not become final until ten days following its service upon Goldman, and only if Goldman did not file objections thereto; and (e) if criminal, Goldman was not afforded the protection that the Constitution guarantees in criminal proceedings, including the requirement that the offense be established beyond a reasonable doubt, and that the matter be heard before an unbiased judge.

(16) On September 12, 1991, Goldman, through counsel, filed the instant Motion to Recuse, accompanied by an Affidavit of Bias and Prejudice executed by Goldman.

(17) On September 13, 1991, Goldman, through counsel, filed an Emergency Motion for Writ of Prohibition in the U.S. District Court for the Middle District of Florida seeking to prohibit this Court from requiring the U.S. Marshal to take Goldman into custody, or in the alternative, seeking to prohibit the U.S. Marshal from taking Goldman into custody. On September 16, 1991, the District Court denied the Emergency Motion for Writ of Prohibition (Case No. 91–507–MISC–T–21A).

(18) Pursuant to this Court's Custody Order, the United States Marshal for the District of Maryland took Goldman into custody on September 16, 1991. Goldman was brought before Paul M. Rosenberg, United States Magistrate Judge for the District of Maryland for a hearing on his detention, and with the concurrence of this Court, Judge Rosenberg ordered the United States Marshal to release Goldman because there was insufficient time for the United States Marshal to arrange Goldman's transportation from Baltimore, Maryland, to Tampa, Florida, prior to the scheduled September 17 hearing (Case No. 91–2675, D.Md.). In the detention hearing before Judge Rosenberg, Goldman agreed to appear before this Court if ordered to do so and if he received an adverse ruling on the Emergency Motion for Writ of Prohibi-

tion then pending before the U.S. District Court for the Middle District of Florida (Case No. 91–507–MISC–T–21A). (See ¶ 17.) The District Court denied the Emergency Motion for Writ of Prohibition on September 16, 1991.

(19) On July 23, 1991, Debtor filed a separate adversary proceeding (Adv. 91–455) against Goldman and obtained a temporary restraining order and preliminary injunction enjoining Goldman from proceeding against Debtor, the supersedeas bonds, and the sureties. This adversary proceeding was filed subsequent to this Court's two prior hearings on Orders to Show Cause against Goldman for his post-petition activities against Debtor, the sureties, and the supersedeas bonds notwithstanding the 11 U.S.C. § 362 and § 105 stays.

(20) Goldman, through counsel, sought to appeal this Court's Order Granting Motion for Preliminary Injunction in the adversary proceeding. A Motion for Leave to Appeal was filed with this Court pursuant to the Federal Rules of Bankruptcy Procedure; however, counsel did not sign the Motion. Upon being advised of her failure to sign the Motion, counsel for Goldman refused to sign the Motion. The Motion for Leave to Appeal was transmitted by the Clerk at the direction of this Court, noting in the transmittal order the absence of signature of counsel as required by Rule 9011 of the Federal Rules of Bankruptcy Procedure. This matter is currently pending before the U.S. District Court for the Middle District of Florida (Case No. 91–1193–CIV–T–17A).

(21) Goldman's activities post-petition were allegedly predicated upon the fact the Maryland Court of Special Appeals had affirmed his clients' judgments against Debtor and the mandate had issued thus allowing him to proceed notwithstanding that the mandate was issued post-petition. On August 27, 1991, the Maryland Court of Special Appeals recalled the mandate with respect to the affirmance of the judgments against Debtor and determined "to the extent that ... [the mandate] affirmed the judgments against Celotex and assessed costs against it, the mandate was issued

inadvertently and erroneously." Upon Goldman's Motion filed September 5, 1991, this Court lifted the stay to enable Goldman's clients to respond to a Motion to Remand the cases to the state trial court. The Court did not lift the stay to enable Goldman's clients to file a Petition for Writ of Certiorari with respect to the Court of Special Appeals' recall of the mandate. Goldman filed a Notice of Appeal of this Court's Order on the motion for relief from stay which has been denied (Case No. 91–1693–CIV–T–15B).

## DISCUSSION

Goldman's Motion to Recuse and Affidavit of Bias and Prejudice alleges several actions and comments by this Court, in the aggregate, indicate bias against Goldman and his clients. Goldman further alleges those actions and comments are sufficient to require this Court to recuse itself from consideration of any further matters with regard to any alleged contempt of Goldman or with regard to the adversary proceeding (Adv. 91–455) pursuant to 28 U.S.C. § 144 and § 455.

### TITLE 28 U.S.C. § 144

■ Title 28 U.S.C. § 144[2] does not apply to the bankruptcy court. As indicated by 28 U.S.C. § 151, the bankruptcy court is not considered to be a district court.[3] More importantly, however, it has long been established the bankruptcy court, or indeed, the referee in bankruptcy, does not come within 28 U.S.C. § 144. 13A Charles A. Wright et al., Federal Practice and Procedure § 3551, at 630 (2d ed. 1984). The Court of Appeals for the Fifth Circuit, which this Court follows through the Eleventh Circuit's adherence to Fifth Circuit precedent before our Circuit was formed, holds 28 U.S.C. § 144 applies only to district courts. *Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir.1979). There has been a series of decisions from various federal courts all acknowledging this inapplicability. *Dubnoff v. Goldstein*, 385 F.2d 717 (2d Cir.1967); *In re Casco Bay Lines, Inc.*, 25 B.R. 747 (Bankr.1st Cir.1982); *In re Norton*, 119 B.R. 332 (Bankr.N.D.Ga. 1990); *Lieb v. Tillman (In re Lieb)*, 112 B.R. 830 (Bankr.W.D.Tex.1990); *Southwestern Gold, Inc. v. Williams (In re Williams)*, 99 B.R. 70 (Bankr.D.N.M.1989); *Hessen v. Beagan (In re Teltronics Services, Inc.)*, 39 B.R. 446 (Bankr.E.D.N.Y.1984); *In re WHET, Inc.*, 33 B.R. 424 (Bankr. D.Mass.1983). Within this context, Rule 5004 of the Federal Rules of Bankruptcy Procedure clearly states 28 U.S.C. § 455 governs the disqualification of bankruptcy judges.[4] Congress, the Supreme Court and the Rules Committee, although certainly aware of the existence of 28 U.S.C. § 144, have not provided for its utilization with respect to bankruptcy judges.

■ Assuming, *arguendo*, 28 U.S.C. § 144 were applicable to the bankruptcy courts, several issues must be considered. Among these is the issue of timeliness of the Motion to Recuse. Title 28 U.S.C. § 144 requires strict adherence to timeliness of the procedure. 13A Wright et al., *supra*, § 3551, at 641–46. The motion to recuse and the affidavit as required by the statute must be timely filed.[5] Here, many months passed between the entry of the original Orders to Show Cause on January

---

**2.** Title 28 U.S.C. § 144 provides, in part:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

**3.** Title 28 U.S.C. § 151 provides "the bankruptcy judges in regular active service shall constitute *a unit of the district court* to be known as the bankruptcy court for that district." (emphasis added).

**4.** Rule 5004 of the Federal Rules of Bankruptcy Procedure provides "[a] bankruptcy judge shall be governed by 28 U.S.C. § 455."

**5.** Title 28 U.S.C. § 144 states "[t]he affidavit ... shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time."

Terms for the federal courts have now been eliminated. The appropriate standard at present appears to be reasonable diligence. 13A Wright et al., *supra*, § 3551, at 641.

16 and March 27, 1991 and the filing of the Motion to Recuse on September 12, 1991.[6]

This Court also considers relevant under 28 U.S.C. § 144 the issue of whether Goldman is a party. There are several decisions which speak to any prejudice or bias being directed to a party and not its counsel. Specifically, the Court of Appeals for the Fifth Circuit has stated the term "party" in 28 U.S.C. § 144 does not usually include counsel. *Davis v. Board of School Comm'rs*, 517 F.2d 1044, 1050 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).

Another issue under 28 U.S.C. § 144 is that of waiver. Subsequent to this Court's Order Commanding United States Marshal to Take Harry Goldman, Jr., Into Custody and Physically Present Him Before the Court, the culmination of the Motion to Recuse, but prior to his filing of the Motion to Recuse, Goldman sought relief from the automatic stay from this Court on behalf of his clients. Seeking affirmative relief after the events purportedly evincing bias but before filing a motion to recuse has been held to effect a waiver. 13A Wright et al., *supra*, § 3551, at 643–45.

■ Finally, viewing Goldman's affidavit within the strictest confines of 28 U.S.C. § 144, it does not meet the legal sufficiency test. 7B James W. Moore et al., Moore's Federal Practice § 144, at JC–165–66.1.

> In an affidavit of bias, the affiant has the burden of making a three-fold showing:
>
> 1. The facts must be material and stated with particularity.

6. Those Orders to Show Cause were directly related to the acts which allegedly form the basis for recusal.

7. It should be noted, the attorney who signed the certificate of good faith as required by 28 U.S.C. § 144 is no longer counsel of record and that counsel also refused to sign Goldman's Motion for Leave to Appeal with respect to this Court's Order Granting Motion for Preliminary Injunction entered in the adversary proceeding (Adv. 91–455). Consequently, the efficacy of that certificate of good faith remains in question.

> 2. The facts must be such that, if true they would convince a reasonable man that a bias exists.
>
> 3. The facts must show the bias is personal, as opposed to judicial, in nature.

*Parrish v. Board of Comm'rs*, 524 F.2d 98, 100 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976) (quoting *United States v. Thompson*, 483 F.2d 527, 528 (3d Cir.1973)). Such is not the case here. This Court notes the allegations in the affidavit relate directly to this Court's enforcement of its previous orders, rather than to any particular extra-judicial activities by the Court.[7] *Davis*, 517 F.2d at 1051. Even assuming Goldman becomes a party to share standing, which it appears at a certain point he may, there is no showing of extra-judicial activities which may establish a basis for recusal. Nonetheless, this Court's ruling is premised on the fact 28 U.S.C. § 144 does not apply to bankruptcy judges.[8] The Court finds 28 U.S.C. § 455 is the appropriate mechanism to pursue disqualification of a bankruptcy judge.

### TITLE 28 U.S.C. § 455

■ As to the issue of recusal under 28 U.S.C. § 455[9], Goldman has raised numerous instances which he states, as a whole, indicate grounds for recusal. This Court has the authority under 28 U.S.C. § 455 to review each of these instances. 13A Wright et al., *supra*, § 3550, at 629. Goldman has pointed to several comments purportedly made by the Court during the course of various hearings which supposedly indicate bias. First, Goldman has focused on the use of the term "disdain" by the Court at the original show cause hear-

8. Even if 28 U.S.C. § 144 could be found applicable to bankruptcy judges, its effect is procedural at best and merely establishes the need for an affidavit and a certification of counsel.

9. The pertinent portions of 28 U.S.C. § 455 provide:
   (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
   (b) He shall also disqualify himself in the following circumstances:
   (1) Where he has a personal bias or prejudice concerning a party ...

ing on January 21, 1991, at which neither Goldman nor his counsel appeared.[10] The Court does not consider the use of the word "disdain" in the context used as reflective of a personal bias against Goldman.

Second, Goldman has concentrated on the use of the word "chutzpah" by the Court to describe Goldman's acts (i.e., Goldman's actions required chutzpah on his part). Although the Court has not located the particular place in the transcript where the term was used, the term has been used by this Court on other occasions, and the Court would not doubt its use in this case.[11] However, the Court does not view "chutzpah" as a derogatory term indicating bias against Goldman.

Finally, Goldman has stated this Court indicated during a hearing Goldman was manipulating the rights of his clients. Although the affidavit broadly suggests the location of this remark in the record, upon reviewing the transcript of the August 2, 1991, hearing on the Motion for Preliminary Injunction, the Court was unable to find the use of the word "manipulation" or any synonymous word or phrase.[12] If the term is, in fact, some-

where in the transcripts, then it is understood by the Court to be defined as the ability to utilize rights, strategies and available tactics for the benefit of clients. Again this does not indicate any form of personal bias or animosity against Goldman.

Goldman has also pointed to other comments made by the Court at the August 2, 1991, hearing. Goldman asserts the settlement agreement between Home and Debtor states the supersedeas bonds would become property of the estate in the event of Debtor's bankruptcy, a position purportedly contrary to the one presented by Debtor and Home to the Maryland state courts. Goldman asserts these varying positions indicate a form of fraud on the Maryland courts. Goldman goes on to state this Court did not seriously consider the position of his clients with regard to the alleged fraud of Debtor or Home as to these bonds, thus indicating bias.[13]

The adversary proceeding in which the Court was allegedly less serious than appropriate concerned enjoining Goldman because of his failure to acknowledge the 11

10. Specifically, the Court stated, "I view with distain (sic) the fact that Mr. Goldman did not appear. I think he should have at least the courtesy to appear, at least by someone in this town, to at least voice his particular position." (Transcript of January 21, 1991, hearing at 6.)

The Court went on to state, "I have applauded in the past and continue to applaud all the counsel who seek diligently to advocate the process of their particular party. I did that on the outside and I have no problems with it here. However, those that look with distain (sic) upon us I can only suggest the following." (Transcript of January 21, 1991, hearing at 7.) Following this statement, the Court announced its ruling.

11. The state courts of Florida and Maryland, as well as various federal courts, have used the term "chutzpah" in their opinions. E.g., Northwest Airlines v. Air Line Pilots Ass'n Int'l, 808 F.2d 76, 83 (D.C.Cir.1987); Archer v. Levy, 543 So.2d 863, 865 (Fla. 3d DCA 1989); Hartford Accident and Indemnity Ins. Co. v. Birdsong, 553 A.2d 251 (Md.Ct.Spec.App.1989).

12. At the August 2, 1991, hearing, the Court did say "[y]ou can substitute those liens. Every lien—it may be far better for the Debtor to substitute the lien with something else. There may be a whole other various possible matura-

tion (sic) to protect all parties in incorporating that." (Transcript of August 2, 1991, hearing at 46) (emphasis added).

13. Beginning on page 14 of the transcript of the August 2, 1991, hearing in the adversary proceeding (Adv. 91–455):

Ms. Arcuri (counsel for Goldman): I think a preliminary injunction aids and abets the debtor and Home Insurance Company in their fraud on the courts, the Maryland courts.

The Court: What was the great fraud on the Maryland courts?

Ms. Arcuri: They have entered into an agreement which, by the terms of the agreement, they have agreed to keep secrets from everybody.

The Court: Give me a hint of what great agreement is being kept secret.

Ms. Arcuri: The agreement between Home Insurance Company and the debtor which says we are going to put up these indemnity bonds for you, but the—surety bonds for you, but we are going to have to have this formula about this allocation of money. If we don't spend money on the bond, we are going to give money to the very thing which this Court has looked at and said that means that the Debtor still has—maintains this bond sufficient to be protected in the Chapter 11.

U.S.C. § 362 automatic stay and this Court's 11 U.S.C. § 105 stay. In that adversary proceeding, Goldman's Motion to Dismiss Celotex Corporation's Motion for Preliminary Injunction and Complaint to Extend the Automatic Stay discusses on one page a possible fraud on the Maryland courts. To this Court, a reading of the Motion would suggest fraud is not presented as a basis for the Motion to Dismiss. Rather, it appears to raise in jurisdictional terms the perpetual question of whether a supersedeas bond is property of the estate. If there is some basis to dismiss the complaint or quash the injunction because of fraud on another court, it has yet to be appropriately raised and heard in the adversary proceeding.

As noted, Goldman has sought relief from the stay to continue the litigation and appeal against Debtor. There appears to be nothing in the Motion for Relief from the Stay relating to any particular fraud as a cause for lifting the stay.[14] There still remains a final evidentiary hearing on July 24, 1992, regarding relief from the stay for Goldman's clients. As to whether the issue of fraud on the appellate courts of Maryland is still before us, this Court no doubt will hear it when raised.

■■■ Goldman has also claimed the Court engaged in *ex parte* communication with Debtor's counsel in the adversary proceeding. The grounds for the charge of *ex parte* contact between the Court and Debtor's counsel is the fact an emergency hearing was conducted on July 24, 1991, with regard to Debtor's request for a temporary restraining order against Goldman. Goldman alleges the hearing was conducted without notice to Goldman's counsel and that the Court's acceptance of Debtor's assertion that the matter was an emergency further indicates bias against Goldman. As to this allegation, the Court notes the hearing was conducted within the well established confines of Rule 65 of the Federal Rules of Civil Procedure and Rule 7065 of the Federal Rules of Bankruptcy Procedure. There was service of the Motion for Preliminary Injunction and Certification of Necessity of Request for Emergency Hearing by Federal Express mail one day before the hearing. The entry of a temporary restraining order by the Court does not in any way violate either Rule 65 or 28 U.S.C. § 455, especially since the Court held a final hearing within the time frame prescribed by Rule 65.[15]

■■■ As to the Order requiring Goldman to appear before this Court, his refusal, and this Court's use of the U.S. Marshal Service to require his attendance, the Court would note that the Order requiring Goldman's attendance directed Goldman to respond within a certain period of time as to whether he would appear or the Court would utilize the U.S. Marshal Service to compel his appearance. Goldman did respond in writing. His letter filed August 30, 1991, indicated in very definite terms he would not appear. Having received such a statement from an officer of the court, it is not the obligation of this Court to hold the hearing to see whether or not an appearance is made. Once Goldman stated he would not appear, the Court entered the Order directing the U.S. Marshal to take him into custody. As discussed by the Supreme Court in its decision in *Chambers v. Nasco, Inc.*, —— U.S. ——, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991), the power to enter such an order derives from the inherent power of a court to enforce its orders.

■■■ The Court reviews all these issues within the context of the Court of Appeals for the Eleventh Circuit's consideration of similar though not identical facts

---

**14.** Goldman also claims his clients' Motion for Relief from the Stay was not heard in an expeditious manner. It should be noted this Court determines what is an emergency and what is not an emergency in light of all the facts. The Court notes the relief sought in the Motion was generally granted. What was not granted was appealed, and the appeal was denied.

**15.** At the August 2, 1991, final hearing the Court entered its Order Granting Motion for Preliminary Injunction. That Order is on appeal notwithstanding the refusal of Goldman's counsel to sign the Motion for Leave to Appeal. This Court has not been informed as to whether any *ex parte* communication or service issue has been raised in the appeal.

associated with 28 U.S.C. § 455. *United States v. Alabama*, 828 F.2d 1532 (11th Cir.1987), *cert. denied sub nom. Board of Trustees v. Auburn University*, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988); *McWhorter v. City of Birmingham*, 906 F.2d 674 (11th Cir.1990). Also of interest, although a little more tangentially related to bankruptcy, is *In re Beard*, 811 F.2d 818 (4th Cir.1987). Within this context, it is quite clear under 28 U.S.C. § 455, issues of recusal must be personal, not judicial matters. All of the issues raised herein are judicial in nature. The only exception to that rule, as discussed in *McWhorter*, is where the acts of a court indicate pervasive bias and prejudice. *McWhorter*, 906 F.2d at 678. There is no showing here of any such bias or prejudice.

■ Viewing the arguments of counsel from a reasonable person standard—whether a person with knowledge of all the circumstances might reasonably question the judge's impartiality—the issues presented by Goldman are insufficient to form the grounds for recusal under 28 U.S.C. § 455. The terms "disdain," "chutzpah" and "manipulative" or "manipulate" in the context in which this Court understands they may have been used, fall outside any personal antipathy. As to the comments on the settlement agreement, clearly if someone believes there is a basis for this Court to examine the activities of individual members of the bar or other persons, then they have to present the allegations before this Court in the appropriate manner. The mere statement of counsel that there may be fraud in another court in which litigation is currently ongoing and for which this Court has lifted the stay is no basis upon which an allegation of prejudice can be founded.

■ Furthermore, it is undisputed this Court's orders and the 11 U.S.C. § 362 and § 105 stays were being violated. In such a situation, an order compelling an officer of the court to appear was not inappropriate. If people do not obey the orders of a court, the court must enforce those orders whether they be directed to counsel or to a party. If people want to dispute results, they must litigate them in the court in which the authority and power lie in the first instance. If they do not agree with the court's orders, then they must exercise their right to appeal.

Considering all of the above and the legal authority set forth, the Court finds that a reasonable person considering all the circumstances and facts presented to this Court, would not find that this Court was partial or biased. Consequently, the Motion to Recuse should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Recuse Thomas Edward Baynes, Jr., Bankruptcy Judge from Presiding in Further Proceedings in These Matters Concerning Any Alleged Contempt of Harry Goldman, Jr., Attorney at Law, and in the Adversary Proceeding is denied. It is further

ORDERED, ADJUDGED AND DECREED that this Court by separate order will set the remaining matters in the Third Order Regarding Order to Show Cause Directed to Harry Goldman, Jr., for final evidentiary hearing.

DONE AND ORDERED.